IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT ANTHONY KILLIAN and FABIOLA KILLIAN,<br><br>    Plaintiffs,<br><br>    vs.<br><br>PACIFIC EDUCATIONAL SERVICES COMPANY, a Nevada corporation, dba Hawaii College of Pharmacy, DAVID CHAMPION MONROE, fka David Yacas, DENISE A. CRISWELL, aka Deedee Criswell, aka DeDe Criswell, aka Denise Criswell Nakajima,<br><br>    Defendants.<br>_____ | CIVIL NO.  05-00468 JMS/KSC<br><br><br><br><br><br><br><br>ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT |

**ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiffs Robert and Fabiola Killian ("Plaintiffs") seek treble damages from individual corporate officers under Hawaii Revised Statutes ("HRS") § 480-13(a)(1) based on violations of HRS § 446E, including failure of an unaccredited institution to include an explicit disclosure statement as required by HRS § 446E-2 and dissemination of statements regarding accreditation as prohibited by HRS § 446E-5(f).  For the following reasons, the court GRANTS the Plaintiffs' Renewed

Motion for Partial Summary Judgment and awards damages in the amount of $103,486.89.

## II. **BACKGROUND**

Plaintiffs previously filed -- and the court granted -- a Motion for Partial Summary Judgment as to Plaintiffs' HRS §§ 446E-2, 446E-5(f), and negligence claims against Pacific Educational Services Company ("PES"), the corporate parent of the Hawaii College of Pharmacy ("HICP"). *See Killian v. Pac. Educ. Servs.*, 05-CV-468 (Docket No. 53, Oct. 23, 2006). The court assumes familiarity with the background facts as set forth in that order. The additional facts relevant to the claims against Defendants David Champion Monroe ("Monroe") and Denise A. Criswell ("Criswell")[1] are as follows:

Monroe was PES's Chief Operating Officer, Secretary and majority shareholder; Criswell was PES's Chief Executive Officer and President.[2] Pls'. Mot. For Partial Summ. J. Ex. E. PES was the parent company of HICP. In a September 9, 2003 letter from Criswell to Jeffrey Brunton, attorney for the State of Hawaii Office of Consumer Affairs, and copied to Monroe, Criswell identifies

---

[1] The court refers to Defendants PES, Monroe, and Criswell collectively as "Defendants."

[2] Monroe and Criswell listed themselves in various documents as "Doctors." *See* Pls'. Mot. For Partial Summ. J. Exs. C, D & H. However, neither had received a PhD. *See* Pls'. Mot. For Partial Summ. J. Ex. F at 5.

Monroe and Criswell as HICP's "employee[s] required by [HRS §] 446E-5(d)[3] that reside[] in Hawaii" and Monroe as the agent in Hawaii authorized to accept service of process on HICP's behalf. Pls'. Renewed Mot. for Partial Summ. J. Ex. E at 4.

Together, Monroe and Criswell directed and managed the day-to-day operations of HICP, including reviewing financials, determining enrollment levels, and controlling the purse-strings. Clifford Park ("Park"), HICP's Chief Financial Officer, testified that Monroe and Criswell were the only two people working in the HICP office in December of 2003.[4] Pls'. Renewed Mot. for Partial Summ. J. Ex. D at 10-11. Although Park was the CFO of HICP, he had no check signing authority and only had access to some of HICP's bank account statements. Park's testimony is consistent with that of Steven Criswell, who testified that, although his name appeared in PES's corporate paperwork as the Treasurer, he did not have access to PES's financial books and records and was not a signatory on any of

---

[3] HRS § 446E-5(d) provides:

> No unaccredited institution shall issue degrees unless the institution has an office located in Hawaii, at least one employee who resides in Hawaii, and at least twenty-five enrolled students in Hawaii, in each academic year of its operation for the purpose of performing course requirements that are part of the students' educational curriculum.

[4] The testimony of various witnesses refers to depositions taken by the State of Hawaii Office of Consumer Protection in a related case filed in the First Circuit Court of the State of Hawaii, Civil No. 05-1-1356-07.

PES's checking or financial accounts. *See* Pls'. Mot. For Partial Summ. J. Ex. E; Pls'. Renewed Mot. for Partial Summ. J. Ex. B at 20-21. More startling, other individuals who were named as PES officers testified that they in fact had no involvement whatsoever with PES and that their names were listed as officers without (or against) their consent.[5]

Of particular relevance to the present matter, Park testified that Monroe and Criswell prepared the HICP webpage and were responsible for its contents. Pls'. Renewed Mot. for Partial Summ. J. Ex. D at 18. The HICP webpage contained statements that "The HICP is actively seeking accreditation with the American Council of Pharmaceutical Education ["ACPE"]"; "At this

---

[5] Randal Criswell is listed as a director on PES's Articles of Incorporation, but he testified that he had not wanted to be involved with PES and had never agreed to be a director. Pls'. Renewed Mot. for Partial Summ. J. Ex. C at 19-22.

Dr. Harry Rosenberg, President of the University of Southern Nevada, is listed as a member of the PES Board of Trustees. *See* Pls'. Mot. For Partial Summ. J. Ex. C at 6. However, Dr. Rosenberg wrote a letter dated July 17, 2005 to the State of Hawaii Department of Consumer Protection stating that,

> I am in receipt of your recent request as to whether or not I ever served as a member of the Hawaii College of Pharmacy Board of Trustees. My response is categorically <u>no</u>. I have never been given an appointment or accepted an appointment to the Board, nor have I attended any Board meetings. In fact, my name was placed on the Hawaii College of Pharmacy list of consultants without my consent. . . . The University of Southern Nevada has no formal or informal relationship with the Hawaii College of Pharmacy . . . .

Pls'. Mot. For Partial Summ. J. Ex. G.

4

time, the College has submitted a pre-application . . . . Subsequently, a site visit to the campus by ACPE will be made sometime in the early spring of 2004"; and "The [HICP] has submitted an application for accreditation for its Doctor of Pharmacy program. This Application will be considered by the ACPE Board of Directors during its June 24-27, 2004, meeting." Pls'. Mot. For Partial Summ. J. Exs. A & B. The webpage contained the following "disclaimer":

> Until the Hawai'i College of Pharmacy receives candidate statues [sic] in the summer of 2005 we are mandated to place the following disclosure from the Hawai'i Revised Statutes:
>
> the Hawai'i College of Pharmacy is not accredited by an accrediting agency recognized by the United States Secretary of Education.
>
> However, the Hawai'i College of Pharmacy is aggressively facilitating the process of accreditation with the [ACPE].

Pls'. Mot. For Partial Summ. J. Ex. A. Monroe was listed on the webpage as the person to contact with any questions. Pls'. Mot. For Partial Summ. J. Exs. A & B.

Park also testified that Monroe and Criswell created the "Hawai'i College of Pharmacy, Catalog and Student Handbook 2004-2005" ("HICP Catalog")[6] which states:

---

[6] Metadata indicates that the HICP Catalog was created on October 4, 2003. Pls'. Mot. For Partial Summ. J. Ex. C. Park first saw the HICP Catalog in February or March, 2004. Pls'. Renewed Mot. for Partial Summ. J. Ex. D at 71. Park testified that Monroe and Criswell created the HICP Catalog and that the "academics" created a later version dated November 3, 2004. *Id.*
(continued...)

> The Hawai'i College of Pharmacy is actively seeking accreditation with the [ACPE] . . . . At this time, the college has submitted a pre-application; the initial step towards full accreditation to ACPE. Subsequently, a site visit to the campus by the ACPE will be made sometime in the early spring of 2004.
>
> After the pre-application process is approved a second application to ACPE will be made. The candidate status application will then commence once ACPE approves of the previous application. Upon the entry of the inaugural pharmacy class of 2007 the Hawai'i College of Pharmacy will be in full participation of the candidate status application.

Pls'. Mot. For Partial Summ. J. Ex. C at 22; Pls'. Renewed Mot. for Partial Summ. J. Ex. D at 71. According to Park, Monroe and Criswell disseminated the HICP Catalog to students. Pls'. Renewed Mot. for Partial Summ. J. Ex. D at 71-72. Robert Killian apparently received the HICP Catalog after enrolling at HICP in the fall of 2004. Robert Killian Decl. ¶ 20.

      The Plaintiffs allege that the statements made on the webpage and in the HICP Catalog regarding the accreditation application process were untrue and that HICP did not actually file a pre-application with ACPE; no site visit was scheduled for the early spring of 2004; and the ACPE Board of Directors was not scheduled to consider the allegedly non-existent application during its June 24-27,

---

[6](...continued)
The later version is not included in the record and is not addressed in this order.

2004 meeting. In their Opposition to the Plaintiffs' original Motion for Partial Summary Judgment, Defendants countered that HICP had submitted two applications for accreditation: a petition for pre-candidate status submitted October 1, 2003 and a petition for candidate status submitted September 7, 2004 (later supplemented by a December 15, 2004 filing). *See* Defs'. Counter Mot. for Partial Summ. J. Exs. 8 at 26 & 10 at 45-46.

On July 27, 2005, the State of Hawaii Office of Consumer Protection ("State") filed suit against PES, Monroe, Criswell, and others in state court, alleging that they had failed to make mandatory disclosures regarding HICP's accreditation status; misrepresented that HICP had applied for future accreditation; misrepresented HICP's class size, structural facilities, and affiliations with the University of Southern Nevada; and various other claims including retaliation and breach of contract. *See Executive Risk Indem., Inc. v. Pac. Educ. Servs.*, 451 F. Supp. 2d 1147, 1153-54 (D. Haw. 2006). Default judgment was entered against PES, Monroe, and Criswell. *Id.* at 1154. As a result, the State seized PES, Monroe, and Criswell's available assets. The money recovered by the State was distributed amongst those HICP students who had filed claims with the State. On April 23, 2007, Plaintiffs received $6,135 as their pro rata portion of the recovered assets. Aff. of Michael F. O'Connor Re: Payment to Robert Anthony Killian ¶ 2.

Also on July 27, 2005, Plaintiffs filed suit alleging violations of HRS § 446E, fraud, and negligence. *See* Second Am. Compl. ¶¶ 10-35. The Plaintiffs filed a Motion for Partial Summary Judgment on January 3, 2006 and the Defendants countered with two separate motions: an Opposition and Counter Motion for Partial Summary Judgment as to the Constitutionality of HRS § 446E-5 and a Motion for Summary Judgment as to the Constitutionality of HRS § 446E-3. The State filed an Amicus Curiae Brief in support of the constitutionality of HRS § 446E. In an order dated October 23, 2006, this court granted in part and denied in part the Plaintiffs' Motion for Partial Summary Judgment and denied the Defendants' Motions for Summary Judgment, finding that HRS § 446E is constitutional. *See Killian v. Pac. Educ. Servs.*, 05-CV-468 (Docket No. 53, Oct. 23, 2006). Although the court granted the Plaintiffs' Motion for Partial Summary Judgment as to PES, the court denied it as to Monroe and Criswell.[7]

On January 9, 2007, Plaintiffs filed a Renewed Motion for Partial Summary Judgment as to the HRS § 446E claim against Monroe and Criswell. Monroe and Criswell did not file an Opposition to the Plaintiffs' Motion, and did

---

[7] Following the court's order, counsel for PES, Monroe, and Criswell were permitted to withdraw from the case. It appears that PES, Monroe and Criswell remain without counsel.

not appear for the scheduled April 23, 2007 hearing on the Motion.[8]

### III. STANDARD OF REVIEW

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether there is a genuine issue of material fact will depend on whether "reasonable minds could differ as to the import of the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of

---

[8] Although the Plaintiffs attempted to serve their Renewed Motion for Partial Summary Judgment on the Defendants, and the court attempted to notice Defendants of the scheduled hearing date, communications with PES, Monroe, and Criswell have been returned as undeliverable.

material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  Instead, the nonmoving party must set forth "significant probative evidence tending to support the complaint" and showing that there is a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(e).  Thus, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (citations omitted).

The court has diversity jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.  As such, the court applies Hawaii state substantive law to its consideration of the claims that Monroe and Criswell violated HRS § 446E and acted negligently.  *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938).

## IV.  ANALYSIS

**A.     The HICP Webpage and HICP Catalog Violate HRS § 446E**

"A treble damage action under HRS § 480-13(a)(1) based on violations of HRS § 480-2 is a tort action. . . .  Consequently, a corporate officer or director who participates in the acts proscribed by HRS § 480-2 is a joint tortfeasor, jointly and severally liable with the corporation." *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 135, 712 P.2d 1148, 1155 (Haw.

App. 1985). Plaintiffs' HRS § 480-2 claim is based on HRS § 446E-3 which provides that "[a]ny person who violates this chapter shall be deemed to have engaged in an unfair or deceptive act or practice pursuant to section 480-2 [HRS § 480-2]."

### 1.     HRS § 446E-2

The court previously found that as an unaccredited institution, HICP was required by HRS § 446E-2(a) to include the following disclosure on its webpage:

> [HICP] IS NOT ACCREDITED
> BY AN ACCREDITING AGENCY
> RECOGNIZED BY THE UNITED STATES
> SECRETARY OF EDUCATION
>
> Note: In the United States, many licensing authorities require accredited degrees as the basis for eligibility for licensing. In some cases, accredited colleges may not accept for transfer courses and degrees completed at unaccredited colleges, and some employers may require an accredited degree as a basis for eligibility for employment.

HICP failed to include the required language on its webpage, and instead included a "disclaimer" that attempted to further bolster HICP's image as an institution actively seeking, or close to receiving, its accreditation.[9] As a result, the court

---

[9] Instead of the required disclosure language, HICP's webpage stated "the Hawai'i College of Pharmacy is not accredited by an accrediting agency recognized by the United States
(continued...)

found that PES violated HRS § 446E-2.

### 2.     *HRS § 446E-5(f)*

The court also found that PES violated HRS § 446E-5(f) which provides that "[n]o unaccredited institution shall disclose in any catalog, promotional material or written contract for instruction that it has applied for future accreditation." HICP included statements that it had applied for future accreditation on both its webpage[10] and the HICP Catalog.[11]

---

[9](...continued)
Secretary of Education. However, the Hawai'i College of Pharmacy is aggressively facilitating the process of accreditation with the [ACPE]."

[10]   The HICP webpage contained statements that "The HICP is actively seeking accreditation with the [ACPE]"; "At this time, the College has submitted a pre-application . . . . Subsequently, a site visit to the campus by [the] ACPE will be made sometime in the early spring of 2004"; and "The [HICP] has submitted an application for accreditation for its Doctor of Pharmacy program. This Application will be considered by the ACPE Board of Directors during its June 24-27, 2004, meeting."

[11]   The HICP Catalog not only states that the institution has applied for accreditation, but also provides a timeline of the accreditation schedule:

> The Hawai'i College of Pharmacy is actively seeking accreditation with the [ACPE] . . . . At this time, the college has submitted a pre-application; the initial step towards full accreditation to ACPE. Subsequently, a site visit to the campus by the ACPE will be made sometime in the early spring of 2004.
>
> After the pre-application process is approved a second application to ACPE will be made. The candidate status application will then commence once ACPE approves of the previous application. Upon the entry of the inaugural pharmacy class of 2007 the Hawai'i College of Pharmacy will be in full participation of the candidate status application.

### 3.     *Individual Liability Under HRS §§ 446E-3, 480-2 & 480-13(a)(1)*

The court now considers whether Monroe and Criswell are personally liable to Plaintiffs.  "The established law is that corporate officers, directors, or shareholders 'are not personally liable for the tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons.'" *Eastern Star, Inc.*, 6 Haw. App. at 134, 712 P.2d at 1155 (*citing Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 526, 543 P.2d 1356, 1360 (1975)); *accord Fuller v. Pac.  Med. Collections*, 78 Haw. 213, 225, 891 P.2d 300, 312 (1995) (noting that in *Eastern Star*, the court "adopted reasoning which extended individual liability to a corporate employee acting within the scope of his or her employment.").  Where there is "active participation in the acts or practices proscribed by HRS § 480-2 . . . [a corporate officer] is not protected by the corporate shield and bears the risk of personal liability." *Eastern Star*, 6 Haw. App. at 135, 712 P.2d at 1156.

The court finds that Monroe and Criswell were active participants in PES's violations of HRS §§ 446E-2 & 446E5(f).  Monroe and Criswell controlled *all* aspects of PES and HICP, including financial and enrollment decisions.  Park's testimony establishes that Monroe and Criswell created the webpage content and authored the HICP Catalog, both of which violated HRS § 446E.

13

Monroe and Criswell failed to counter Plaintiffs' version of the facts or to otherwise show that there was a genuine issue of material fact left for trial.[12] The court therefore GRANTS the Plaintiffs' Renewed Motion for Partial Summary Judgment as to the claims that Monroe and Criswell are individually liable for violations of HRS § 446E and as such are per se liable for violations of HRS § 480-2.

**B.      Causation**

The court previously ruled that there was insufficient evidence on the record to show causation between the Defendants' unlawful actions and the damages suffered by the Plaintiffs. Plaintiffs have now submitted supplemental declarations establishing that the statements contained on the webpage led Robert Killian to enroll at HICP because he believed that HICP was undertaking the steps necessary to become accredited; that HICP was in the process of receiving its accreditation; and that HICP had fulfilled prerequisites to receiving a site visit. The Plaintiffs state that had they been aware that HICP was not, in fact, close to becoming accredited by the ACPE; was not scheduled to have an on-site campus

---

[12] Monroe and Criswell did not respond in any manner to Plaintiffs' Renewed Motion for Partial Summary Judgment. Monroe and Criswell's Opposition to the Plaintiffs' original Motion for Partial Summary Judgment primarily focused on the constitutionality of HRS § 446E, and did not set forth facts undermining the Plaintiffs' evidence that Monroe and Criswell were active participants in PES/HICP's unlawful activities.

visit; and that HICP's application was not on track to be considered at ACPE's June 2004 meeting, Robert Killian would not have enrolled at HICP since he was aware that a degree from an unaccredited school would not entitle him to take a pharmacy license exam in any state. The court finds that the Plaintiffs' evidence is sufficient to show causation with regards to the costs of tuition and books paid by the Plaintiffs.

Plaintiffs also introduced testimony from Park stating that 98% of students applying were from the West Coast. Plaintiffs argue that this, along with the fact that PES/HICP advertised for applications on its webpage, made it likely that the Defendants knew or should have known that students would be moving to Hawaii from the West Coast. The court agrees. It was foreseeable to the Defendants that the Plaintiffs would incur moving costs from California to Hawaii; indeed, the Defendants enticed the Plaintiffs and others to do so by publishing accreditation statements on its webpage and in the HICP Catalog. The court therefore finds that the Plaintiffs have shown causation with regards to the costs of moving from California to Hawaii.

\\\

\\\

\\\

**C.     Calculation of Damages**

The court now turns to calculating the damages.  Specifically, the court looks at the expenses incurred and harm suffered by the Plaintiffs; the availability of treble damages under HRS § 480-13(a)(1); and the impact of the Plaintiffs' previous recovery of $6,135 from the state court action.

*1.     Damages Under HRS Chapter 480*

Under Hawaii law, the proper measure of damages in an action for unfair and deceptive business practices under HRS § 480-2 is the same as the measure of damages in fraud cases, namely "to put the plaintiff in the position he would have been had he not been defrauded." *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 290, 788 P.2d 833, 836-37 (1990).  The measure of such damages includes amounts expended in the course of accepting or pursuing the deceptive offer.  *See Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 322, 47 P.3d 1222, 1235 (2002).  Applying these standards, the court finds that the Plaintiffs may recover for damages for the following: (1) the amounts actually paid for HICP tuition ($25,550) and seat deposit ($1,000), *see* Pls'. Mot. for Partial Summ. J. Exs. J, K & L; (2) the cost of HICP books ($670.63), *see* Pls'. Mot. for Partial Summ. J. Ex. P; (3) plane tickets for Robert Killian, Fabiola Killian, and their two

16

children to fly to Hawaii ($700),[13] *see* Pls'. Mot. for Partial Summ. J. Ex. O; (4) the relocation costs associated with moving from California to Hawaii, including shipment of a Dodge Intrepid ($1009) and Nissan Quest ($899), *see* Pls'. Mot. for Partial Summ. J. Exs. M & N; and (5) costs incurred as a direct result of the move to Hawaii, including a repayment of scholarship to San Francisco State when Fabiola Killian withdrew from school ($3,192) and Hawaii childcare costs in excess of those that would have been paid in California ($3,520), *see* Pls'. Mot. for Partial Summ. J. Exs. Q & S, for a total of $36,540.63.[14]

### 2. *Compensatory Damages for Sale of Stock*

Plaintiffs also claim $21,348.32 in damages for the sales of stock proceeds, arguing that such sales would not have been necessary but for their move to Hawaii. *See* Pls'. Mot. for Partial Summ. J. Ex. I. However, other than vague statements that they needed to sell the stock to cover their costs, Plaintiffs

---

[13] In his Declaration attached to the Plaintiffs' original Motion for Partial Summary Judgment, Robert Killian claims to have paid $1,470 in airfare for his family of four. *See* Robert Killian Decl. ¶ 17. However, this figure is not otherwise substantiated by the record. Instead, handwriting on a printed Hawaiian airline itinerary notes that Plaintiffs paid "one way airfare for 3 @ $175 each. Plus another one way @ $175 for Robert Sr" for a total of $700. Pls'. Mot. for Partial Summ. J. Ex. O.

[14] Plaintiffs are not moving for damages resulting from Fabiola Killian leaving her job at Safeway in California, a position at which she earned approximately $650 per week. Nor do the Plaintiffs claim damages for the $80 application fee.

have failed to show that $21,348.32 was the amount necessary to cover any moving costs or Hawaii-based living expenses in excess of those that they would have incurred in California. Indeed, it appears to the court that awarding this amount would allow the Plaintiffs double recovery, at least as to some costs: Fabiola Killian states that "[t]o move to Hawaii, Robert and I sold our stock savings for $21,348.32. We used this money to move our cars to Hawaii, fly to Hawaii, pay for books, pay a security deposit for an apartment, etc." Decl. of Fabiola Killian ¶ 4. The court also rejects as overly speculative any implied argument that the sale of stocks resulted in a loss of appreciation of investment value.[15] The court therefore declines to award Plaintiffs damages of $21,348.32 for the sales of their stock.

### 3. *Treble Damages Under HRS § 480-13(a)(1) and Deduction for $6,135 Already Collected from State Action*

The sum total damages sustained by the Plaintiffs and recoverable based on the record before the court is $36,540.63. Under HRS § 480-13(a)(1), Plaintiffs are eligible for treble damages. The question for the court is whether the deduction of the $6,135 already collected by the Plaintiffs as their pro rata share of

---

[15] For the same reason, the court declines to award damages resulting from the Plaintiffs' rental costs upon their return to California. Plaintiffs appear to imply that, because their previous home was paid in full, these rental costs are damages directly incurred as a result of the Defendants' actions. Plaintiffs have presented no evidence regarding the profit or loss from the sale of their California home.

monies recovered in the state action should be deducted before or after factoring the multiplier. The court finds that the deduction should occur after calculating the treble damages: to rule otherwise would undermine the statutory purpose of the treble damage provision and reward Monroe and Criswell for a legal judgment obtained by the State. *See Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 68-69, 905 P.2d 29, 44 (1995) ("HRS chapter 480 is a remedial statute, which is 'to be construed liberally in order to accomplish the purpose for which [it was] enacted . . . . Remedial statutes are liberally construed to suppress the [perceived] evil and advance the [enacted] remedy.'") (*quoting Dawes v. First Ins. Co. of Hawai'i Ltd.*, 77 Haw. 117, 123, 883 P.2d 38, 44 (1994) (citation and some brackets omitted)). The court will not diminish Defendants' liability under HRS § 480-13(a)(1) because the State was partially successful in obtaining restitution for Plaintiffs. Thus, the Plaintiffs are awarded $103,486.89 (the trebling of $36,540.63 less $6,135).

### 4. *Attorneys' Fees*

Under HRS 480-13(a)(1), "if judgment is for the plaintiff, the plaintiff shall be awarded . . . reasonable attorney's fees together with the costs of suit . . . ." *See also Cieri*, 80 Haw. at 70, 905 P.2d at 45 ([U]nder Hawai'i's statutory scheme, awards of attorneys' fees are mandatory."). The court therefore

grants the Plaintiffs' request for attorneys' fees and instructs the Plaintiffs to file a motion for attorneys' fees under Local Rule 54.3.

## V.  CONCLUSION

For the aforementioned reasons, the court GRANTS the Plaintiffs' Renewed Motion for Partial Summary Judgment and awards them $103,486.89 in damages and attorneys' fees in an amount to be determined.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 2, 2007.



J. Michael Seabright
United States District Judge

*Killian et al. v. Pacific Educational Services Co. et al.*, Civ. No. 05-00468 JMS/KSC, Order Granting Plaintiffs' Renewed Motion for Partial Summary Judgment